UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


ELEPHANT FOR DOLLAR, INC.,   )
    Plaintiff   )
        )
    v.   )
        )
DDRM RIVERDALE SHOPS, LLC,   )
    Defendant, Plaintiff-in-Counterclaim )    Civil Action No.  11-30069-NMG
        )
    v.   )
        )
ELEPHANT FOR DOLLAR, INC. and   )
LISELOT WALKER,   )
    Defendants-in-Counterclaim   )


REPORT AND RECOMMENDATION WITH REGARD TO MOTION
FOR SUMMARY JUDGMENT BROUGHT BY DEFENDANT/PLAINTIFF-IN-
COUNTERCLAIM (Document No. 23)
March 2, 2012

NEIMAN, U.S.M.J.

     This dispute centers on a lease between Elephant for Dollar, Inc. ("Elephant"),

the lessee, and DDRM Riverdale Shops, LLC ("DDRM"), the lessor.  Elephant alleges

in its three-count complaint that DDRM violated the conditions of an amended lease

agreement and seeks damages and injunctive relief.  DDRM asserts counterclaims

against both Elephant and its owner, Liselot Walker ("Walker"), maintaining that any

amendments to the original lease were invalid and that Elephant and Walker breached

the conditions of that lease.  DDRM seeks specific performance and damages.

     DDRM has moved for summary judgment on both of its counterclaims against

Elephant and Walker (for breach of contract and specific performance), as well as on

each count of Elephant's complaint (bad faith negotiations, breach of contract, and

injunctive relief barring eviction). The motion has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court will recommend that DDRM's motion be denied.

## I. STANDARD OF REVIEW

When ruling on a motion for summary judgment, a court must construe the facts in a light most favorable to the non-moving party. *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## II. BACKGROUND

The following facts are construed in a light most favorable to Elephant and Walker. In the summer of 2010, after working as a manager of a dollar store in West Springfield, Walker, on behalf of Elephant, purchased the store from its then-owner and negotiated and signed a "lease assignment agreement" with DDRM. (Document No. 25, ¶ 4-5.) In exchange for a two-year lease of the premises, Elephant agreed to pay

2

$17,000 per month in rent; in addition, Elephant agreed to repay a total of $196,829 in past due rent, owed by the previous tenant, through a series of agreed-upon monthly installments from August of 2010 through March of 2011.  (Document No. 26, Exhibit B.)  The structure of these payments was detailed in a letter signed by Michael Smith ("Smith"), the Leasing Director of DDRM, and incorporated into the lease assignment agreement as "Schedule B."  (*Id.*)  Walker herself signed a guarantee agreement, assuming personal liability for Elephant's performance of the assigned lease.  (Document No. 26, Exhibit C.)

When negotiating these agreements, Walker dealt exclusively with Smith.  (Complaint ¶ 12-13.)  Walker claims that, during a meeting at an Olive Garden restaurant in June of 2010, Smith told her that "if there was anything that he [could] do for [Elephant] to succeed and move forward, he would definitely do it."  (Document No. 26, Exhibit A at 53.)  Although Walker at first believed Smith had sole authority to bind DDRM to a contract with Elephant, she learned during negotiations that the final lease assignment would need to be ratified by other members of DDRM.  (*Id.* at 40.)

Elephant made the appropriate payments of rent and past due rent in August and September of 2010.  (Complaint ¶ 14.)  However, on September 25th, Walker, in an attempt to free up money so Elephant could purchase extra inventory, called Smith seeking a waiver of the past due rent payments for the upcoming months.  (Document No. 26, Exhibit A at 12.)  Smith remembers a telephone call from Walker on that date but denies that he agreed to any waiver of payments; he recalls only that Walker was complaining that she was having trouble with business.  (Document No. 26, Exhibit E at

21-22.)  In any event, Walker claims that Smith agreed to suspend payments of the past rent due through December of 2010 and promised to negotiate a new repayment plan of all unpaid past rent after Christmas.  (Document No. 26, Exhibit A at 49.)  Walker believed that Smith had the authority to arrange such a modification.  (*Id.* at 52.)

Continuing, Walker asserts that on October 11, 2010, a woman named Dawn, who was employed by DDRM, called her to inquire about the missing October payment for past rent due.  (*Id.* at 13-14.)  Walker informed Dawn of her agreement with Smith and, thereafter, continued to make Elephant's payments of monthly rent, but not of past rent due, through December 2010.  (*Id.*; Complaint ¶ 16.)  Walker had no further contact with DDRM through the end of the year.  On January 3, 2011, she sent a letter to Smith inquiring into the status of negotiating a restructured payment plan.  (Document No. 26, Exhibit A at 16-17.)  On January 25th, Smith responded in a brief email that the matter was out of his hands.  (*Id.* at 19.)  Based on that response, Walker, believing Elephant to be in imminent danger of eviction, cancelled various orders for new inventory.  (*Id.* at 54.)  Nonetheless, Walker has continued to make monthly rent payments on behalf of Elephant, although she did not make any payments of past rent due for January, February, or March of 2011, the last months for such payment under the lease assignment agreement.  (*Id.* at 11-12.)  In due course, Elephant filed the instant action.

### III. DISCUSSION

In its motion for summary judgment, DDRM argues that Smith did not have the

4

authority to modify the terms of the original lease assignment and, therefore, any such "amendment" to the lease was invalid. In addition, DDRM argues that, even if Smith had the necessary authority, the Statute of Frauds bars Elephant from asserting any promissory estoppel defense. Further, DDRM asserts, even if the Statute of Frauds does not preclude Elephant's use of promissory estoppel as a defense, Elephant has failed to meet the requisite elements of that defense because there was no promise by DDRM or reasonable forbearance by Elephant. Finally, DDRM seeks the remaining past rent due balance of $125,970.64, as well as an unspecified amount for interest, legal fees, and late fees. In response, Elephant argues that DDRM's motion for summary judgment should be denied, there being genuine disputes of material fact at issue with respect to all claims. The court considers these arguments *seriatim*.

A. DDRM's Motion for Summary Judgment on Elephant's Claims

    1. Apparent Authority

Whether an individual, here Smith, has the apparent authority to act on behalf of a principal, here DDRM, "is a question of how, in the circumstances, a third person . . . would reasonably interpret [the agent's] authority in light of the manifestations of [the] principal." *Kanavos v. Hancock Bank & Trust Co.*, 439 N.E.2d 311, 315 (Mass. App. Ct. 1982). Apparent authority is a question of fact, taking into consideration the totality of the circumstances. *Costonis v. Medford Hous. Auth.*, 176 N.E.2d 25, 28 (Mass. 1961).

DDRM asserts that Walker knew, when negotiating the original lease assignment agreement, that Smith did not have authority to sign the lease, including the portion covering payments of past rent due. More to the point, DDRM argues, it

never indicated to Walker that Smith had the authority to modify the lease in the future and, accordingly, Elephant could not have reasonably believed that Smith had authority to change the agreement. Further, DDRM asserts, any statements made by Smith are not relevant to a claim of apparent authority because it is the principal's actions, here DDRM's, which control. Despite this carefully crafted argument, the court believes that the question of apparent authority needs to go to a jury.

Looking at the facts in a light most favorable to Elephant, the court finds it plausible that Walker reasonably understood that Smith had the authority to waive the repayment of past rent due for October through December and, as well, to negotiate how the remaining past rent would be paid at a later date. First, Smith was the sole negotiator offered by DDRM. *See MNW, LLC v. Mega Auto Group, Inc.,* No. 1:08–CV–119, 2010 WL 2943629, at *14 (N.D. Ind. July 21, 2010) ("Placing an agent in the position of sole negotiator on [its] behalf may make it reasonable for a third person to believe that the agent possesses authority to act for the principal."). Second, DDRM could be found to have ratified Smith's alleged agreement with Walker when it voiced no objection and undertook no action for several months in response to Elephant's non-payment of past rent due and, in addition, continued to accept Elephant's regular monthly rent payments. Third, it was Smith who signed the original repayment plan, which was incorporated into the lease assignment agreement as Schedule B; it is therefore plausible for Walker to have believed that Smith had the authority to alter that plan in the future. *See Kanavos*, 439 N.E.2d at 315-16 (agent and third party had a history of past negotiations, the agent was the only person held out by principal to deal

6

with third party, and the change to the contract allegedly made by agent was secondary to its primary purpose).  Indeed, Smith's job title of "Leasing Director" at least implies that he had authority to manage DDRM's leases; even though "[t]itles of office generally do not *establish* apparent authority," *id.* at 315 (emphasis added), they "are relevant insofar as they may have some tendency to suggest executive responsibility," *Interex Corp. v. Atlantic Mut. Ins. Co.*, 874 F.Supp. 1406, 1433 (D. Mass. 1995).

In short, Elephant has proffered sufficient evidence from which a reasonable jury could find that Smith had apparent authority to act on behalf of DDRM.  Accordingly, the court concludes that summary judgment on this issue is not appropriate because apparent authority is a question of fact "not easily amenable to summary judgment." *Zamoyski v. Fifty-Six Hope Rd. Music Ltd., Inc.*, 718 F. Supp. 2d 128, 140 (D. Mass. 2010).

2. Statute of Frauds  *l*  Promissory Estoppel

DDRM argues that, even if Smith had apparent authority, the "contract" he is alleged to have formed with Walker on behalf of Elephant with respect to past rent due was never reduced to writing and is therefore barred by the Statute of Frauds.  *See* Mass. Gen. Laws ch. 259 § 1 ("No action shall be brought . . . [u]pon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them . . . [u]nless the promise, contract or agreement upon which such action is brought . . . is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.").  Moreover, DDRM argues, the original lease assignment agreement specifically barred any oral modifications, thereby making the alleged oral

promise between Smith and Walker with respect to past rent due not binding as a matter of law. In response, Elephant asserts that the Statute of Frauds and the lease assignment agreement's clause barring oral modifications should be trumped by the equitable nature of promissory estoppel.

The court finds Elephant to have the better argument at this stage of the litigation. "A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement." *Hickey v. Green*, 442 N.E.2d 37, 38 (Mass. App. Ct. 1982); *see also* Restatement (Second) of Contracts § 139. The same principle is appropriately applied to "no oral modification" clauses of contracts. *See Grossman v. Pouy*, CIV. A. No. 06-1429, 2008 WL 917000, at *7 (Mass. Super. Apr. 4, 2008). In short, the Statute of Frauds does not unalterably proscribe Elephant's promissory estoppel claim, which allows detrimental reliance to replace consideration in forming a binding contract. *See Rhode Island Hosp. Trust Nat. Bank v. Varadian*, 647 N.E.2d 1174, 1179 (Mass. 1995) ("[A]n action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration.").

Still, DDRM argues that Elephant cannot demonstrate any of the elements of promissory estoppel: "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in

reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Bongaards v. Millen*, 793 N.E.2d 335, 339 (Mass. 2003). The court disagrees.

First, DDRM argues that Smith's alleged statement that he would waive payment of the October through December past rent due payments and then negotiate a new payment plan in January was, at most, an agreement to agree because the terms were too vague to form a binding contract. *See Air Tech. Corp. v. General Elec. Co.*, 199 N.E.2d 538, 548 (Mass. 1964) ("A purported contract which is no more than an agreement to agree in the future on essential terms, or one which does not adequately specify essential terms, ordinarily will be unenforceable."). In essence, DDRM reasons, there was no representation intended to induce reliance.

The court finds, however, that the statement Smith is alleged to have made to Walker could be found specific enough to form a promise. Considering the facts in a light most favorable to Elephant, Smith assured Walker that he would waive the past rent due payments for the months of October, November, and December of 2010 and that he would begin negotiating a modified repayment plan after December 25, 2010. In the court's view, that statement could not only constitute a representation intended to induce reliance but, as well, stands in stark contrast to impermissibly vague promises that have been rejected by other courts. *See, e.g., Wiese v. Courier Corp.*, 2 Mass. L. Rptr. 37, *1-2 (Mass. Super. 1994) (finding a statement that an at-will job would be "for a long period of time" to be too vague to form a promise).

As to the second and third elements of promissory estoppel, DDRM argues that

Elephant did not suffer detrimental reliance on any promise made by Smith. Again, the court disagrees. Looking at the facts in a light most favorable to Elephant, Elephant may well have suffered reasonable forbearance by not making the October through December past rent due payments, thereby breaching the written terms of the lease assignment, and, also, by cancelling multiple orders for inventory in January of 2011 upon learning DDRM was initiating eviction proceedings. That, in the court's view, is enough for present purposes to deny DDRM summary judgment on Elephant's promissory estoppel claim.

In sum, there appears to be sufficient evidence with which a reasonable jury could conclude that Elephant has satisfied the requirements of promissory estoppel. The court will therefore recommend that DDRM's summary judgment motion with respect to Elephant's breach of contract claim be denied.

3. Bad Faith Negotiations

As a separate matter, DDRM asserts that it had no obligation of good faith and fair dealing to negotiate a new payment plan because the original lease assignment agreement was never validly modified. However, should Elephant succeed on its promissory estoppel claim, a reasonable jury may well conclude that DDRM breached its implied good faith obligation by refusing to negotiate with Elephant. Therefore, the court will recommend that summary judgment on Elephant's bad faith negotiations claim in favor of DDRM be denied.

B. DDRM's Motion for Summary Judgment on Its Counterclaim

Finally, DDRM asserts that Elephant breached the original lease assignment

agreement by not making any of the six remaining payments for past rent due after September of 2010 and, therefore, Elephant must immediately pay it the remaining balance of $125,970.64. DDRM also maintains that Elephant is required to pay further damages to DDRM in accord with the terms of the lease assignment; DDRM, however, does not specify how these damages should be measured.

Elephant concedes that it must eventually pay DDRM the remaining $125,970.64 balance of the past rent due. However, Elephant's promissory estoppel claim, if it survives summary judgment as recommended, includes an alleged promise by DDRM to renegotiate the repayment structure of all past rent due installments after September, 2010. Accordingly, further proceedings will be necessary to determine how the remaining $125,970.64 is to be paid; in short, it is premature to grant summary judgment to DRRM on the past rent due.

### III. CONCLUSION

For the reasons stated, the court recommends that DDRM's motion for summary judgment be DENIED.[1]

_____

[1] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to

DATED: March 2, 2012

/s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

another party's objections within fourteen (14) days after being served with a copy
thereof.